UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
CARO CAPITAL, LLC, CARO PARTNERS, LLC,            :
JUPITER WELLNESS, INC., BRIAN JOHN, and           :
RICHARD MILLER,                                   :
                                                                      :
                            Plaintiffs,                               :
                                                                      :
              -v-                                                     :
                                                                      :
ROBERT KOCH, BEDFORD INVESTMENT              :
PARTNERS, LLC, KAIZEN ADVISORS LLC, and       :
JOHN DOES 1–10,                                         :
                                                                      :
                            Defendants.                               :
                                                                      :
----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/30/2023

20-cv-6153 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiffs-Counterclaim Defendants Caro Capital, LLC, Caro Partners, LLC, Jupiter

Wellness, Inc., Brian John, and Richard Miller (collectively the "Caro Parties" or "Plaintiffs")

move, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on the

counterclaims brought by Defendants-Counterclaim Plaintiffs Robert Koch and Bedford

Investment Partners (together, "Koch Parties" or "Defendants").  Dkt. No. 130.  For the

following reasons, the motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

This case revolves around Defendants' alleged attempt to extort Plaintiffs for millions of

dollars by delaying the initial public offering ("IPO") of Jupiter Wellness, Inc. ("Jupiter").  The

extortion is not at issue in this motion.  Rather, Plaintiffs challenge Defendants' counterclaims

for unjust enrichment related to the Koch Parties' contributions to Jupiter.

Jupiter started as purveyor of cannabidiol- or "CBD"-infused products.  *See* Dkt. No. 137 ("Koch Parties' 56.1 Response")[1] ¶ 54 (quoting Dkt. No. 136, Ex. 7 (Jupiter's Prospectus)). Reflecting the nature of its business, Jupiter was initially named CBD Brands, Inc. ("CBD Brands") and its website was www.cbdbrands.net.  Dkt. No. 133 ("Caro Parties' 56.1") ¶¶ 26, 30; Koch Parties' 56.1 Response ¶¶ 26, 30.[2]  However, in connection with its IPO in November 2020, Jupiter changed its name because of negative connotations with CBD and because other CBD companies were underperforming.  *See* Caro Parties' 56.1 ¶¶ 26–28, 42; Koch Parties' 56.1 Response ¶¶ 26–28, 42.  Today, Jupiter has deviated only slightly from its CBD origins; it has two primary product lines:  CaniSun, a CBD-infused sunscreen, and toys that it makes for Disney Universal.  *See* Caro Parties' 56.1 ¶ 29; Koch Parties' 56.1 Response ¶ 29.

The parties agree on the nature of Jupiter's business, but have very different accounts of the role that Robert Koch ("Koch") played in Jupiter's founding and the value of the services he contributed to Jupiter.  Koch testified that he co-founded Jupiter and "created CBD Brands"

---

[1] The Koch Parties' Rule 56.1 statement does not contain sequentially numbered paragraphs. Instead, the Koch Parties' Rule 56.1 statement contains two sections, the first responding to the Caro Parties' Rule 56.1 statement and the second setting forth additional material facts; each section begins at ¶ 1.  *See* Dkt. No. 137 at 2, 23.  The Court will refer to the sections as the "Koch Parties' 56.1 Response" and the "Koch Parties' 56.1 Response, Additional Facts," respectively.

[2] Throughout the Koch Parties' 56.1 Response, the Koch Parties identify certain paragraphs as "[u]ndisputed" as to what the evidence states (*e.g.*, that a witness testified in a certain way), but "disputed that these 'facts' are true and/or material to the [Caro] Parties' motion for summary judgment."  *See, e.g.*, Koch Parties' 56.1 ¶ 26.  Local Rule 56.1(b) requires a party opposing a motion for summary judgment to "include a correspondingly numbered paragraph responding to each numbered paragraph in the [56.1] statement of the moving party."  L.R. 56.1(b).  This corresponding paragraph "must be followed by citation to evidence which would be admissible."  L.R. 56.1(d).  Otherwise, the "the numbered paragraph . . . will be deemed to be admitted for purposes of the motion."  L.R. 56.1(c).  That is, the opposing party must *demonstrate*, not just state, that there is an actual dispute of fact.  *See, e.g.*, *James v. Stewart*, 2021 WL 5331752, at *3 (S.D.N.Y. Nov. 16, 2021); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014).  Thus, the Koch Parties' assertions that certain facts are "disputed" without citation to admissible evidence need not be, and are not, accepted by this Court.

alongside Brian John ("John").  Koch Parties' 56.1 Response, Additional Facts ¶ 1.  He testified

that he "raised money for [Jupiter], helped build the PowerPoint, owned the domain names, came

up with the name CaniSun," recruited Dr. Glynn Wilson ("Wilson") to serve on Jupiter's board

of directors, and developed logos for the company.  Caro Parties' 56.1 ¶¶ 19, 23, 56; Koch

Parties' 56.1 Response ¶¶ 19, 23, 56.  The Koch Parties also present evidence which they claim

shows that Koch gave Jupiter an indirect loan when the company ran short on cash.  *See* Koch

Parties' 56.1 Response, Additional Facts ¶¶ 44–51.  The Caro Parties do not dispute the general

nature of Koch's involvement with Jupiter; rather, they dispute the degree to which Koch

assisted the company and the value of Koch's contributions.

Koch purchased several domain names, including www.kannablals.com,

www.kannables.com, www.kannisun.com, and www.cbdbrands.net.  *See* Caro Parties' 56.1

¶¶ 39–40; Koch Parties' 56.1 Response ¶¶ 39–40.  Two of these domain names,

www.kannablals.com and www.kannables.com, were purchased for $12.17 each; there is no

evidence in the record of how much Koch paid for www.kannisun.com and www.cbdbrands.net.

Caro Parties' 56.1 ¶¶ 39, 41; Koch Parties' 56.1 Response ¶¶ 39, 41.  At least one of these

domain names, www.cbdbrands.net, was transferred to Jupiter.  *See* Caro Parties' 56.1 ¶ 30;

Koch Parties' 56.1 Response ¶ 30.  The transfer of www.cbdbrands.net led to one of the many

arguments between Koch and John contained in the record.  Caro Parties' 56.1 ¶ 11; Koch

Parties' 56.1 Response ¶ 11.  After a delay in transferring the domain name in March 2020, John

wrote Koch: "Bobby I don't know what kind of f[***]ing bulls[**]t or shake down you're trying

to do here but I'm gonna tell you now if it doesn't get transferred in the next 24 hours you can

lose my f[***]ing number for good."  Koch Parties' 56.1 Response, Additional Facts ¶ 40

(quoting Dkt. No. 139, Ex. 28 at KOCH 106034).  Koch eventually transferred the domain name

to John, who texted, "Love you Bobbby.  Thanks for getting that done today."  Koch Parties'

56.1 Response ¶ 11; Koch Parties' 56.1 Response, Additional Facts ¶ 41 (quoting Dkt. No. 139,

Ex. 29 at KOCH 116881).

John testified that Jupiter used www.cbdbrands.net "when we were originally setting up

the company. . . .  It was our email address basically."  Caro Parties' 56.1 ¶ 30 (quoting John

Dep. 66:13–15); Koch Parties' 56.1 Response ¶ 30.  However, the website "never did any

business."  *Id.*  In fact, discovery only produced evidence of a single online sale of a Jupiter

product, for $112.32 on June 19, 2019.  Caro Parties' 56.1 ¶¶ 35–36; Koch Parties' 56.1

Response ¶¶ 35–36.  The order was for CBD gummy bears and sunscreen and was placed by

Koch himself.  Caro Parties' 56.1 ¶ 37; Koch Parties' 56.1 Response ¶ 37.  Jupiter has filed two

Form 10-Ks since its November 2020 IPO.  Caro Parties' 56.1 ¶ 42; Koch Parties' 56.1 Response

¶ 42.  Both list www.JupiterWellness.com as Jupiter's "primary corporate website."  *Id.*  Neither

mentions www.cbdbrands.net.  Caro Parties' 56.1 ¶ 44; Koch Parties' 56.1 Response ¶ 44.

Earlier SEC filings, however, do include www.cbdbrands.net and Jupiter's prospectus lists the

website as its "primary corporate website."  *See* Koch Parties' 56.1 Response ¶ 42; Koch Parties'

56.1 Response, Additional Facts ¶ 43.  Koch testified that he has no plans for the website and

that the Koch Parties' attorney questioning him could "have it."  Caro Parties' 56.1 ¶ 31 (quoting

John Depo. 81:7–19); Koch Parties' 56.1 Response ¶ 31.

In April 2017, the Koch Parties also purchased the domain name www.kannisun.com.

Caro Parties' 56.1 ¶ 40; Koch Parties' 56.1 Response ¶ 40; Koch Parties' 56.1 Response,

Additional Facts ¶ 2.  Despite the Koch Parties' purchase, John testified that Koch "ha[d no]

input into" the name of one of Jupiter's best-selling products, "CaniSun," which was developed

by Richard Miller ("Miller").  Caro Parties' 56.1 ¶ 33 (quoting John Dep. 67:18–25, 125:17–21);

Koch Parties' 56.1 Response ¶ 33.[3]  Whatever work Koch did for "K-A-N-N-A-S-U-N," John

testified, was "Bobby[] doing it on his own"—"[w]e have always been C-A-N-I-S-U-N."  *Id.*

The Koch Parties do not dispute that the record lacks evidence that Koch invented the name

"CaniSun," *see* Caro Parties' 56.1 ¶ 53; Koch Parties' 56.1 Response ¶ 53; rather, in addition to

Koch's purchase of the domain www.kannisun.com, the Koch Parties present evidence that (1) in

May 2017, Koch developed logos, which incorporated the name "Kannasun," which he shared

with John, Koch Parties' 56.1 Response ¶ 53 (citing Dkt. No. 139, Exs. 4–5), and (2) conflicting

testimony from John and Miller concerning which of the two developed the name CaniSun, *id.*

On June 7, 2019 and May 14, 2021, Jupiter filed for trademarks for CaniSun.  Caro

Parties' 56.1 ¶ 55; Koch Parties' 56.1 Response ¶ 55; *see also* Dkt. No. 132, Ex. 2.  On August 6,

2020, Jupiter filed a provisional patent for the CaniSun product line.  Caro Parties' 56.1 ¶ 51;

Koch Parties' 56.1 Response ¶ 51.  In its public filings, Jupiter valued its intellectual property at

$0 in 2020 and $375,000 in 2021; Jupiter's operating expenses included a $731,629 impairment

to intangible assets in 2020 and a $300,000 impairment to intellectual property in 2021.  Caro

Parties' 56.1 ¶¶ 49–50, 52; Koch Parties' 56.1 Response ¶¶ 49–50, 52.  The Form 10-Ks do not

identify specific assets or liabilities associated with Jupiter's CaniSun products.  Caro Parties'

56.1 ¶ 48; Koch Parties' 56.1 Response ¶ 48.  Further, it is undisputed that the Caro Parties never

used the logos that Koch developed, though the Koch parties presented evidence that John

reviewed the logos and encouraged their development.  Caro Parties' 56.1 ¶ 56; Koch Parties'

56.1 Response ¶¶ 33, 56.

---

[3] John purchased www.canisun.com and www.canisun.net for $65.98 and $14.98, respectively.
Caro Parties' 56.1 ¶ 38.

The Koch Parties presented evidence that they provided value to John and Jupiter in other ways, including by soliciting investments and board members.  Neither party disputes that the Koch Parties helped to solicit at least one investment, from Wilson.  Caro Parties' 56.1 ¶ 23; Koch Parties' 56.1 Response ¶ 23.  Wilson, in a declaration that he later testified was accurate, affirms that Koch was "at most[,] a minor facilitator in [his] conversations and relationships with Plaintiffs."  Caro Parties' 56.1 ¶¶ 23, 25.  He also affirms that he met Koch through John and Miller, not the other way around.  *Id.*  The Koch Parties dispute this characterization.  They present evidence that Koch was involved in soliciting investments from several individuals:  He developed materials to share with individuals in October 2018, prepared a term sheet in November 2018, and was involved in conversations with Jupiter's attorneys about fundraising, at John's behest.  *See* Koch Parties' 56.1 Response, Additional Facts ¶¶ 6–10.  He also sent documents to several investors, including Wilson.  *Id.* ¶¶ 13–14.  He testified that he was "the one who introduced Glynn Wilson to the company . . . [and] the one who solicited [Wilson] for the investment of CBD Brands."  Koch Parties' 56.1 Response ¶ 23.  Koch's testimony is supported by additional evidence, including text messages between Koch and Wilson setting up meetings with Wilson for John and himself and providing information about a "friends and family" investment round.  *Id.*[4]

Not only did Koch solicit an investment from Wilson, but he also claims that he "recruited Dr. Wilson . . . to become a member of CBD Brands' board of directors."  Koch Parties' 56.1 Response, Additional Facts ¶ 16 (emphasis removed).  There is evidence that John asked Koch to find board members for Jupiter.  *Id.* ¶ 17.  Wilson, disputes any role that Koch

---

[4] The Koch Parties also presented evidence that Koch was involved in the preparation of materials for a potential merger in late 2018, *see* Koch Parties' 56.1 Response, Additional Facts ¶¶ 22–25, and met with bankers related to Jupiter's IPO, *see id.* ¶¶ 27–29.

played in his decision to join Jupiter's board, declaring that "Koch was immaterial to [his] decision to join Jupiter." Caro Parties' 56.1 ¶ 23.

Finally, the Koch Parties present evidence that, in June of 2019, Jupiter was running out of money and risked "go[ing] out of f***ing business." *See* Koch Parties' 56.1 Response, Additional Facts ¶¶ 44–45 (quoting Dkt. No. 139, Ex. 30 at KOCH 116780). John proposed loaning $50,000 of the "mrkr money" to Jupiter. *Id.* The Marker money apparently refers to 36,500 shares of a company, 40% of which, the Koch Parties claim, belongs to them. *Id.* ¶ 46; Dkt. No. 139, Ex. 2 at 97. The Koch Parties point to language from John's testimony in support of their contention that "at least 40% of the 'mrkr money' was owed to Koch." Koch Parties' 56.1 Response, Additional Facts ¶ 50; *see also id.* ¶¶ 47–48 (text messages suggesting that "we," instead of John individually, lent the money to Jupiter). In June 2019, John loaned Jupiter money from the proceeds of the sale of Marker stock. *Id.* ¶ 50.

More generally, the Caro Parties state that the "Koch Parties have not provided any expert opinion quantifying the benefit they provided to Jupiter" and they "have not provided any other analysis quantifying the benefit that they provided to Jupiter." Caro Parties' 56.1 ¶¶ 58–59. The Koch Parties do not dispute either statement with direct evidence by either presenting expert reports or analyses that they prepared. Rather, they present evidence which they claim can be used to quantify the value that they provided. *See* Koch Parties' 56.1 Response ¶ 59.

## PROCEDURAL HISTORY

On August 6, 2020, the Caro Parties filed a complaint ("Complaint") alleging that Koch was attempting to extort them for millions of dollars by holding up Jupiter's IPO. Dkt. No. 1. The Koch Parties filed an answer to the Complaint on August 31, 2022. Dkt. No. 13. With its answer, the Koch Parties also filed its first set of counterclaims, alleging that Plaintiffs did not pay compensation that was owed to Defendants pursuant to thirty-five agreements and their work

on Jupiter.  *Id.*  The counterclaims brought claims for breach of contract, unjust enrichment, and fraudulent inducement as to John, breach of fiduciary duty also as to John, accounting as to Caro Capital, LLC ("Caro Capital") and Caro Partners, LLC ("Caro Partners"), and defamation.  *See id.*  In an Opinion and Order, dated April 23, 2021, the Court dismissed the counterclaims without prejudice to the filing of an amended counterclaim alleging breach of contract and unjust enrichment.  *See* Dkt. Nos. 53, 62.

Defendants filed their second amended counterclaim ("SAC").  Dkt. No. 63.  The SAC brought a breach-of-contract claim against John, Caro Capital, and Caro Partners, *id.* ¶¶ 408–13, and an unjust-enrichment claim against all Plaintiffs, *id.* ¶¶ 414–20.  In an Opinion and Order, dated February 14, 2022, the Court dismissed the breach-of-contract claims for the Koch Parties' non-Jupiter work because the alleged oral contracts violated the requirement of the New York Statute of Frauds that any contract for negotiating the sale of an interest in a business be in writing.  *See* Dkt. No. 127 at 13–22.  The Court also dismissed Defendants' alleged oral contract for work that the Koch Parties performed for Jupiter in exchange for shares in the company for lack of definiteness.  *See id.* at 22–26.  However, the Court permitted the Koch Parties to maintain their claim for unjust enrichment "insofar as the claim seeks compensation from John and Jupiter for services that went beyond the negotiation or consummation of a business opportunity."  *Id.* at 30.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim."

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Id.*  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).  Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on

the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b). All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible." L.R. 56.1(d). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c).

## DISCUSSION

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.)). "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to

retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal citation and quotation marks omitted). Thus, courts "look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022) (quoting *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 695 (N.Y. 1972)).

Plaintiffs argue that Defendants' unjust enrichment counterclaim fails as a matter of law against John because the Koch Parties' services were "performed for Jupiter the [c]ompany, not Mr. John the individual" and John thus did not benefit from these services. Dkt. No. 131 at 14. Plaintiffs further argue that summary judgment is appropriate because there is insufficient evidence to demonstrate that Jupiter benefited from Defendants' actions, the voluntary payment doctrine bars recovery, and "equity and good conscience" prohibit payment. *Id.* at 15–24.

## I.    Unjust Enrichment Against John

Plaintiffs argue that the unjust enrichment claim against John must fail because there is no evidence that Defendants performed any services for John or that John, as opposed to Jupiter, received any benefits from the Koch Parties. *Id.* at 14. Defendants counter that "there is no factual support for the assertion that Koch's services were rendered to Jupiter rather than to John" and that John did receive a benefit—he maintained his 100% ownership stake in Jupiter despite his promises to give Koch 40% of his Jupiter stock. Dkt. No. 136 at 12. The Court finds that Defendants cannot maintain their unjust enrichment claim against John.

Defendants argue that "Koch was never employed by Jupiter and never received any compensation from Jupiter whatsoever. He also was not an officer or director of Jupiter." *Id.* at 12. As a result, Defendants conclude, there is no evidence that "Koch's services were rendered

to Jupiter rather than to John." *Id.* Defendants, however, are precluded from making this argument at summary judgment because it directly contradicts their claims in the SAC. Throughout Defendants' SAC, they assert that Koch was working directly for Jupiter, not for John. *See, e.g.*, Dkt. No. 63 ¶¶ 19, 282 ("Mr. Koch continued to work for the Company"); *see also id.* ¶ 416 ("Counterclaim Defendants induced Mr. Koch to work for the Company knowing that they would benefit from the services that Mr. Koch provided."). Defendants' theory of liability thus rests, as asserted in the SAC, on the fact that "the work that Mr. Koch performed for [Jupiter] inured to the benefit of" all Plaintiffs. *Id.* ¶ 418. In light of its pleadings, the Court described Defendants' unjust enrichment claim in the following way: "Koch has alleged that Jupiter and John, *as owner of Jupiter*, have benefitted from Koch's actions." Dkt. No. 127 at 30 (emphasis added).

Here, for the first time, Defendants raise, without citation to evidence, a new theory of liability: that Koch could have been working directly for John, not for Jupiter, and thus John was directly enriched by Koch's services. However, "[a] party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment." *Heletsi v. Lufthansa German Airlines, Inc.*, 2001 WL 1646518, at *1 (E.D.N.Y. Dec. 18, 2001); *see also Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 32 (2d Cir. 2018) (concluding that district court did not abuse its discretion for refusing to consider third-party beneficiary argument, raised in an opposition to summary judgment when complaint had only pled a privity theory of recovery); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (affirming district court's decision not to entertain "argument [raised] for the first time in [] papers opposing . . . motion for summary judgment"). "[T]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it." *Greenidge*, 446 F.3d at 361.

Defendants did not provide Plaintiffs notice that they might argue that Koch's work was performed for John, as opposed to Jupiter, and thus did not give Plaintiffs an opportunity to develop evidence to counter this theory of liability.[5]  Stated differently, Defendants had every opportunity to amend their counterclaims to raise this theory of liability, and, because they did not do so, the Court will not now consider Defendants' new theory of liability.

Because all of Koch's actions were directed to Jupiter as a company, any claim against John must stand or fall on John's role as an owner of Jupiter.  To maintain a claim for unjust enrichment against John directly, Defendants must demonstrate either that Jupiter's corporate veil should be pierced or that John received a benefit separate and apart from his role as an owner of Jupiter.  The rule in New York is that "a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners."  *Morris v. New York State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993).  This concept is subject to an important limiting principle:  A court will "pierce the corporate veil" and "disregard the corporate form" "to prevent fraud or to achieve equity."  *Id.* (internal quotation marks omitted) (quoting *Walkovszky v. Carlton*, 223 N.E.2d 6, 7 (N.Y. 1966)).  "Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y.

---

[5] Even assuming that Defendants had given Plaintiffs sufficient notice of this argument, Defendants have not pointed to any admissible evidence that Koch was in fact working for John. Plaintiffs argued that the services were performed for Jupiter.  Defendants were thus required to establish a genuine issue of fact as to whom Koch was working for by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  Plaintiffs have not carried this burden.

2018).  "Properly understood, an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Id.* (internal citation and quotation marks omitted).

Defendants did not argue that Jupiter's corporate veil should be pierced nor have Defendants pointed to areas in the record that would create an issue of fact as to whether Jupiter's corporate veil should be pierced.  Thus, the Court deems any argument to that effect waived.  *See Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment.  Accordingly, these arguments were waived." (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)); *NML Cap., Ltd. v. Republic of Argentina*, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (same).  Accordingly, the unjust enrichment claims against John that relate to the benefits that were provided to Jupiter fail as a matter of law.  *See, e.g.*, *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 445 (S.D.N.Y. 2010) ("Because plaintiffs do not allege that the corporate veil should be pierced with respect to [the company], there is no basis to conclude that [plaintiffs] . . . conferred a personal benefit on the [owners].  [Plaintiffs] cannot, therefore, recover from the [owners] under an unjust enrichment theory for his sales efforts on behalf of [the company]."); *Levin v. Kitsis*, 920 N.Y.S.2d 131, 134 (2d Dep't 2011) ("The complaint does not adequately plead this cause of action against [the owner] in her individual capacity, however, in that the plaintiffs do not allege any basis for piercing the corporate veil and imposing personal liability upon [the owner].").

Alternatively, courts applying New York law have suggested that an unjust enrichment claim against the owner of a corporation in her individual capacity will not fail as a matter of law

if the plaintiff establishes that the owner received a benefit distinct from that received by the corporate entity.  In *Georgia Malone & Co. v. Rieder*, 926 N.Y.S.2d 494 (1st Dep't 2011), *aff'd* 973 N.E.2d 743 (N.Y. 2012), for example, the First Department overturned the lower court's decision to dismiss the unjust enrichment claims against the managing member and an officer of a limited liability company in their individual capacities.  *Id.* at 495.  The court highlighted how the complaint alleged that the corporate officers benefited "*separate and apart from* any benefit to [the limited liability company], by profiting from the ultimate sale of the property, in addition to the $150,000 received for selling the confidential information."  *Id.* at 496 (emphasis added); *see also Coughlan v. Jachney*, 473 F. Supp. 3d 166, 204 (E.D.N.Y. 2020) (granting summary judgment against plaintiffs' unjust enrichment claim because "[n]othing in the record demonstrates that defendant[ (a vice president of the company)], himself, actually received some benefit from the deposits plaintiff made to [the company].  Rather, the record shows that the deposits were made to [the company] operating account and is bereft of any admissible evidence suggesting that the funds were used for anything except [the company's] business-related expenses.").

This line of cases is consistent with another aspect of New York's law of unjust enrichment, which states that "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment."  *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007).  The relationship between plaintiff and defendant, however, cannot be "too attenuated."  *Rieder*, 973 N.E.2d at 747.  So long as the "the services were performed at the defendant's behest, New York courts have found that defendants can be indirectly liable in unjust enrichment.[6]  *See*

---

[6] A related standard applies to "innocent third parties" (*i.e.*, those with no involvement in the matter but may otherwise benefit unjustly).  There, "New York courts have required proof that the innocent party received a 'specific and direct benefit' from the property sought to be

*Georgia Malone & Co.*, 926 N.Y.S.2d at 497 (collecting cases); *see also Wildenstein*, 944 N.E.2d at 1111 (stating that unjust enrichment requires "a relationship between the parties that could have caused reliance or inducement").  Thus, even if services were performed for a corporation, the owner of a corporation can be liable in unjust enrichment if she benefited separately from the corporation and the work was performed at least partially at her behest.

Defendants appear to be making this argument in their memorandum in opposition to summary judgment.  There, Defendants assert that "John received a benefit from Koch's efforts, namely the value of Jupiter stock."  Dkt. No. 136 at 12.  After the IPO, Defendants argue, "John refused to provide Koch the promised equity interest, instead retaining it himself, in his individual capacity."  *Id.*  Thus, the "benefit" that Defendants conveyed to John was the "wrongfully retained" 40% equity interest in Jupiter that John allegedly offered Koch in return for his work.  *Id.*  This argument misconstrues the law of unjust enrichment.  "Under New York law, a plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was *conferred* upon the defendant, and then show that as between the two parties, enrichment of the defendant was unjust."  *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, 2015 WL 5671724, at *19 (S.D.N.Y. Sept. 22, 2015) (emphasis added) (quoting *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 448 (S.D.N.Y. 2003)).  Stated differently, a party cannot maintain "a cause of action in unjust enrichment . . . [unless the] defendant received something of value which belongs to the plaintiff."  *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012) (internal quotations marks and

---

recovered, not an 'indirect benefit.'"  *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016) (quoting *Grossman*, 202 F.3d at 616).  There is no claim here, nor could there be, that John, who, as owner of Jupiter, reviewed and directed the work of Koch, is "innocent."

citation omitted); *see also M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("To bring such a claim, the plaintiff must have bestowed the benefit on the defendant."). The shares, however, did not belong to Defendants; they belonged to John. To argue otherwise would require that Defendants and Plaintiffs have a legally valid contract that had transferred ownership in the shares to Defendants, a claim that this Court explicitly rejected. *See* Dkt. No. 127 at 24–26. At most, the shares were an inducement for Koch to perform services, which in turn benefited John, a fact that Defendants acknowledge throughout their opposition memorandum. *See* Dkt. No. 136 at 2 ("[T]o induce Koch to provide this start-up assistance for Jupiter, John offered Koch 40% of the Jupiter stock (1.2 million shares)."); *see also id.* at 12, 22. Though an inducement may be necessary for finding that a sufficient relationship between the parties exists, *see Wildenstein*, 944 N.E.2d at 1111, an inducement is distinct from any "benefit" that Koch conferred on John and any expense that Koch may have suffered. Thus, the unjust enrichment claim against John fails as a matter of law. *See State v. Barclays Bank of New York, N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990) (dismissing unjust enrichment claims because plaintiff "never acquired a property interest in [the funds] and cannot be said to have suffered a loss"); *see also Moreno-Godoy v. Kartagener*, 7 F.4th 78, 87 (2d Cir. 2021) (concluding that the quasi contract claims, including unjust enrichment, must fail as a matter of law if plaintiff "did not own the money, [because] neither [defendant] could have been enriched 'at the expense of' [plaintiff] by retaining these funds").

## II.    Unjust Enrichment Against Jupiter

Plaintiffs also argue that Defendants' unjust enrichment claim against Jupiter must fail as a matter of law because Defendants have not sufficiently demonstrated that they conferred a benefit on Jupiter. Dkt. No. 131 at 15–20. In the alternative, Plaintiffs argue that the voluntary payment doctrine bars Defendants' unjust enrichment claim for the transfer of the

www.cbdbrands.net domain and that equity—specifically Koch's conspiracy to commit securities fraud—bars Defendants' counterclaim in its entirety.  The Court addresses each argument in turn.

### A.    Benefit Conferred

Plaintiffs argue that there is no evidence that the Koch Parties conferred a benefit on Jupiter.  *Id.* at 15–16.  To meet their burden, Plaintiffs argue, the Koch Parties are required to present evidence of a causal relationship between Koch's services and Jupiter's enrichment.  *Id.* Plaintiffs further argue that, even if the Koch Parties have conferred a benefit on Jupiter, their "inability to quantify [this claimed] benefit warrants dismissal."  *Id.* at 19.  Defendants counter that they have demonstrated that Koch conferred a benefit on Jupiter and that there is sufficient evidence for a jury to quantify the benefits they conferred in any calculation of damages.  Dkt. No. 136 at 18–20.  While the first argument—that there is no causal evidence of the Koch Parties' benefit—speaks to the elements of Defendants' unjust enrichment claim, Plaintiffs' second argument—the Koch Parties' inability to quantify these benefits, if any—speaks to Defendants burden of proof with respect to the appropriate remedy.  *See* Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* (3d ed. 2018) § 4.1(2), at 377 [hereinafter, "*Law of Remedies*"] ("The fundamental substantive basis for restitution is that defendant has been unjustly enriched by receiving something, tangible or intangible, that properly belongs to plaintiff.  Restitution rectifies unjust enrichment by effectuating restoration to plaintiff.").  As such, the Court will address Plaintiffs' argument with respect to the elements of unjust enrichment in this section and turn to Plaintiffs' argument that speaks to the remedy later in this Opinion.

In order to prove a claim for unjust enrichment "a plaintiff must show that the defendant actually received a benefit."  *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 772 (S.D.N.Y.

2015); *see Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 248 (E.D.N.Y.2014) ("Therefore, if the Plaintiff fails to show that the Defendant received a benefit, there can be no liability for unjust enrichment.").  The benefit must be "specific and direct."  *Grossman*, 202 F.3d at 616.  "For the benefit to be 'direct,' the defendant must either be put in possession of the benefit, or otherwise obtain financial relief because of the benefit."  *Buchwald v. Renco Grp.*, 539 B.R. 31, 49 (S.D.N.Y. 2015) (Nathan, J.), *aff'd sub nom. Matter of Magnesium Corp. of Am.*, 682 F. App'x 24 (2d Cir. 2017).

Defendants argue that they conferred five distinct benefits on Jupiter: (1) Koch developed the name of Jupiter's primary product line, CaniSun, a CBD-infused sunscreen; (2) Koch transferred cbdbrands.net to Jupiter; (3) Koch raised money for Jupiter by preparing materials for the investors and soliciting investments from these investors; (4) Koch recruited Wilson for Jupiter's board of directors; and (5) Defendants contributed financially to Jupiter when John lent Jupiter money derived from shares in Marker Therapeutics ("Marker"), 40% of which Defendants claim belongs to them, and "saved [Jupiter] at a critical juncture when . . . it was insolvent."  Dkt. No. 136 at 3–5.  Plaintiffs counter that the Koch Parties never had any right to the shares in Marker Therapeutics, Dkt. No. 142 at 4–5, and, in any event, the Koch Parties have failed to establish causation, *id.* at 6–7.

As a threshold matter, the Court finds that the Koch Parties cannot claim that they enriched Jupiter by helping to raise money for Jupiter, by lending their alleged share of the money tied to Marker Therapeutics to Jupiter or by assisting in recruiting Wilson to the Jupiter board of directors.  *See Crespo v. Biyombo*, 2015 WL 5222872, at *4–5 (Sup. Ct. N.Y. Cty. Sept. 4, 2015) (analyzing various benefits plaintiff allegedly provided and identifying with specificity the services for which plaintiff could and could not maintain unjust enrichment claims); *Wiener*

*v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 13 (1st Dep't 1998) (same); *see also Kossoff v. Felberbaum*, 281 F. Supp. 3d 454, 468 (S.D.N.Y. 2017) (holding, after a bench trial, that plaintiff "has only proven his unjust enrichment claim within particular parameters" and identifying the services for which plaintiff was entitled to restitution).  The Koch Parties cannot maintain their unjust enrichment claim for the money they claim they raised for Jupiter because it seeks to avoid the New York Statute of Frauds.  "In New York, a plaintiff may not assert an action under a theory of unjust enrichment in order to circumvent the writing requirement of the Statute of Frauds." *Prescient Acquisition Group, Inc. v. MJ Publ'g Trust*, 2006 WL 2136293, at *5 (S.D.N.Y.2006) (citing *Belotz v. Jeffries & Co., Inc.*, 213 F.3d 625 (2d Cir. 2000)).  The New York Statute of Frauds requires that "a contract or agreement for the compensation of a business broker for acting as a 'finder,' 'originator' or 'introducer,' or for assisting in the negotiation or consummation of the transaction" be evidenced by a written instrument.  *Springwell Corp. v. Falcon Drilling Co.*, 16 F. Supp. 2d 300, 304 (S.D.N.Y. 1998) (Sotomayor, J.) (quoting N.Y. Legis. Doc. No., 1964, 65(F)).  If services are "performed as part of or in furtherance of negotiation," *JF Cap. Advisors, LLC v. Lightstone Grp., LLC*, 37 N.E.3d 725, 729 (N.Y. 2015) (emphasis omitted), they are "rendered in negotiating" within the meaning of Section 5-701(a)(10).  Services that "fall within the scope of section 5-701(a)(10)" include "performing due diligence and financial analysis for a transaction covered by section 5-701(a)(10), seeking out and interacting with potential sources of financing, preparing presentations for potential investors, and developing a general negotiating strategy for accomplishing any proposed transactions." *Chardan Cap. Mkts., LLC v. Nw. Biotherapeutics, Inc.*, 2018 WL 3733948, at *4 (S.D.N.Y., Aug. 6, 2018) (citing *Ely v. Perthuis*, 2013 WL 411348, at *3–4 (S.D.N.Y. Jan. 29, 2013)); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 324 n.5

(S.D.N.Y. 2009); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).  For this reason, the Court permitted Defendants' unjust enrichment claim to survive only insofar as it "*went beyond* the negotiation or consummation of a business opportunity."  Dkt. No. 127 at 29 (emphasis added); *see also Dorfman v. Reffkin*, 37 N.Y.S.3d 517, 524 (1st Dep't 2016) (holding that "unjust enrichment and quantum meruit claims were properly sustained, but only insofar as they involved services that went beyond the negotiation or consummation of a business opportunity pursuant to General Obligations Law 5–701(a)(10)").

Here, Defendants argue that they unjustly enriched Jupiter by soliciting investments for the company.  Defendants point to evidence that they reached out to investors, including Wilson, Koch Parties' 56.1 Response ¶ 21; Koch Parties' 56.1 Response, Additional Facts ¶ 13–15; prepared marketing materials for potential investors, Koch Parties' 56.1 Response, Additional Facts ¶ 6; prepared a term sheet for and worked with lawyers on the initial private placement offering, *id.* ¶¶ 9–11; and prepared materials for a potential merger, *id.* ¶¶ 22–25.  These activities fall squarely within the activities required to be evidenced by a writing under the New York Statute of Frauds.  *See Chardan Cap. Mkts.*, 2018 WL 3733948, at *4 (noting that the sale of an interest in a business need not be a controlling interest to fall within the Statute).[7]  Thus,

---

[7] There is language in *Dorfman*, 37 N.Y.S.3d at 521, that suggests that "developing materials to secure investor backing" is a service "extending beyond the negotiation of a business opportunity."  This language merely reflected the "alleg[ations]" of the plaintiff in *Dorfman*, not a finding of the court.  *Id.*  In any event, the New York Court of Appeals has held that the key question is whether "the services for which plaintiff seeks compensation were tasks performed so as to inform defendants *whether* to negotiate for the [business opportunity] at issue, or whether those services were performed *as part of* or *in furtherance of* negotiation for the [business opportunity]."  *Lightstone Grp., LLC*, 37 N.E.3d at 729.  The evidence that Defendants present makes clear that Jupiter had already *decided* to negotiate with investors for financing and to explore a merger.  *See* Koch Parties' 56.1 Response, Additional Facts ¶¶ 6, 22–23; *see also, e.g.*, Dkt. No. 139, Exs. 16, 18.  Thus, these activities fall within the Statute of Fraud's writing requirement.

Defendants are precluded from circumventing the Statute of Fraud by asserting that they unjustly enriched Jupiter in providing these services.

Defendants are also precluded from arguing that the money that John lent was a benefit that the Koch Parties' bestowed on Jupiter.  *See* Dkt. No. 136 at 13–14.  Before Jupiter's IPO, the company had limited cash resources; John lent Jupiter $50,000 derived from shares that he held in Marker Therapeutics, "the only money [he had] in [the] world."  Koch Parties 56.1 Response, Additional Facts ¶¶ 45, 47; *see also* Dkt. No. 142 at 4.  Defendants argue that 40% of this money "was owed to Koch" and thus Jupiter derived a benefit at Defendants' expense.  Dkt. No. 136 at 13–14.

Defendants, however, cannot show that they are entitled to any of this money.[8] Defendants point to two pieces of evidence that they claim demonstrates they were entitled to 40% of the funds loaned to Jupiter.  First, Defendants highlight how John used the plural "we" when referring to the money.  *See* Koch Parties 56.1 Response, Additional Facts ¶ 47 ("[It is] the only money we got in [the] world." (quoting Dkt. No. 139, Ex. 30 at KOCH 116780)); *see also id.* ¶ 48.  Second, Defendants claim that "John confirmed . . . that at least 40% of the 'mrkr money' was owed to Koch."  *Id.* at ¶ 50.  However, John's testimony, presented to this Court by the Koch Parties, clearly refutes the contention that he acknowledged that 40% of the Marker money belonged to the Koch Parties.  *See* Dkt. No. 139 Ex. 2.  Instead, John testified that all the Marker money that was owed to the Koch Parties was paid to the Koch Parties and the portion

---

[8] Plaintiffs argue that this is "a brand-new unjust enrichment theory."  Dkt. No. 142 at 4. Although Defendants do not appear to have made this argument at the motion to dismiss stage, the SAC clearly alleges this theory of unjust enrichment.  *See* Dkt. No. 63 ¶¶ 382–87.  Thus, Plaintiffs were on notice that this argument might be made.  *See Greenidge*, 446 F.3d at 361.

that was his was loaned to Jupiter.  *See id.* at 99–100.  Defendants have not presented sufficient evidence from which a jury could conclude that any portion of the money belonged to them.

Perhaps more fundamentally, the Court already found that Defendants' argument that it was entitled to the portion of the Marker money failed as a matter of law.  In the SAC, Defendants alleged that they were entitled to a share of the Marker stock as a result of an oral contract between Koch and John.  Dkt. No. 63 ¶ 382 ("50% of [the Marker stock] John owed to Mr. Koch and Bedford pursuant to their oral agreement.").  However, the Court found that all of the oral agreements, with the exception of those related to Jupiter, were to negotiate business opportunities and fell within the New York Statute of Frauds.  Dkt. No. 127 at 22.  The Court concluded that "the breach-of-contract and unjust-enrichment claims based on these alleged agreements must be dismissed."  *Id.*  As noted above, an injured party must demonstrate an interest in the alleged transferred funds in order to show that a benefit was conferred at its expense.  *See supra*, pp. 16–17.  Because Defendants have not presented evidence that they have a legally recognized interest in the money derived from the Marker shares, they are unable to argue that Jupiter was unjustly enriched at their expense through John's loan.

The same, however, cannot be said for the remaining three categories of benefits that Defendants argue enriched Jupiter: the transfer of www.cbdbrands.net, contributions to the development of the "CaniSun" name, and the recruitment of Wilson for Jupiter's board of directors.  Defendants have presented sufficient evidence to create a genuine issue of material fact as to whether Jupiter benefited from these actions at Defendants' expense.  Plaintiffs do not contest Defendants transferred the domain name www.cbdbrands.net to Jupiter.  *See* Caro Parties' 56.1 ¶ 30; Koch Parties' 56.1 Response ¶ 30.  Rather, they argue that they made minimal use of the website post-transfer, and they do not intend to use the website going forward.  *See*

Caro Parties' 56.1 ¶ 30 ("It was our email address basically." (quoting John Dep. 66:13–15)); *id.* ¶ 31; Koch Parties' 56.1 Response ¶¶ 30–31.  As an initial matter, the Court must disregard this statement from John.  "[A]llegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz*, 258 F.3d at 73.  Thus, "where . . . the record does not support the assertions in a Local 56.1 statement, those assertions [are] disregarded and the record reviewed independently." *Holtz*, 258 F.3d at 74; *see also Watt v. New York Botanical Garden*, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.").  Here, the Caro Parties have not submitted the relevant excerpts from John's deposition.[9]  Thus, the Court is unable to determine whether the record supports John's assertion and must disregard them.

But even if the Court were required to accept John's deposition testimony as quoted in the Caro Parties' 56.1, by acknowledging that they received a benefit from the transfer of the website, the Caro Parties have acknowledged that there is at least a genuine issue of material fact as to whether Jupiter was unjustly enriched by the transfer.[10]  An unjust enrichment claim does not fail as a matter of law because the benefit received by the defendant at the expense of the plaintiff was minimal or small; it is enough that the defendant received "*some* benefit" from the plaintiff, at the plaintiff's expense.  *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758,

---

[9] In fact, the only evidence from the record that the Caro Parties submitted to this Court were the email exchange between John and Koch, *see* Dkt. No. 132, Ex. 1, and a trademark search for the mark "CaniSun," *see id.*, Ex. 2.

[10] Additionally, although the Caro Parties argue that the website is no longer in use and the Form 10-Ks filed by the company do not include references to www.cbdbrands.net, Caro Parties' 56.1 ¶ 42, the Koch Parties present evidence that earlier SEC filings, including Jupiter's prospectus, list www.cbdbrands.net as its "primary corporate website."  Koch Parties' 56.1 Response ¶ 42; Koch Parties' 56.1 Response, Additional Facts ¶ 43.

784 (S.D.N.Y. 2011) (emphasis added); *see also ABN AMRO Bank, N.V. v. MBIA Inc.*, 916

N.Y.S.2d 12, 18 (1st Dep't 2011), *aff'd as modified*, 952 N.E.2d 463 (N.Y. 2011) (suggesting

that plaintiffs must "allege that they have conferred *some* benefit upon" defendants "at plaintiffs'

expense." (emphasis added)).  Here, the Koch Parties transferred a website they owned to Jupiter

and Jupiter used the website for some portion of its existence.  This evidence is sufficient.

Similarly, there is a question of material fact whether Koch conferred benefits on Jupiter

by helping to develop the brand name of Jupiter's product with the most sales, a CBD-infused

sunscreen, and helping to recruit Wilson to Jupiter's board of directors.  Although the Koch

Parties do not contest that Koch did not directly develop the name "CaniSun," there is evidence

that in April 2017, the Koch Parties purchased the domain name www.kannisun.com.  Caro

Parties' 56.1 ¶ 40; Koch Parties' 56.1 Response ¶ 40; Koch Parties' 56.1 Response, Additional

Facts ¶ 2.  The Koch Parties also present evidence that Koch shared draft logos with John in May

2017 that incorporated the "phonetically identical or substantially similar" "Kannasun."  *See*

Koch Parties' 56.1 Response ¶ 53 (citing Dkt. No. 139, Exs. 4–5).  Finally, the Koch Parties

present Miller's testimony, which suggests that he was not actually involved in the development

of the name CaniSun.  Koch Parties' 56.1 Response ¶ 53.  The Court must disregard the Koch

Parties' assertions with respect to Miller's testimony because the Koch Parties have not provided

the Court with the relevant excerpts from Miller's deposition.  *See Holtz*, 258 F.3d at 74.

However, even absent Miller's testimony, the evidence presented by the Koch Parties is

sufficient to create a genuine issue of material fact as to the role that Koch played in the

development of the brand name CaniSun and whether Jupiter was unjustly enriched by Koch's

involvement in that process.[11]  *See E. Cont'l Min. & Dev. Ltd. v. Signet Grp. LLC*, 2013 WL

---

[11] In contrast, the Koch Parties' unjust enrichment claim against Jupiter fails as a matter of law to

6503526, at *7 (S.D.N.Y. Dec. 9, 2013) ("A party may be unjustly enriched not only where a person receives money or property, but, also, where he otherwise receives a benefit." (internal quotation marks and citation omitted)); *Lake Erie Distributors, Inc. v. Martlet Importing Co.*, 634 N.Y.S.2d 599, 602 (4th Dep't 1995) (refusing to dismiss complaint that alleged plaintiff "conferred a benefit upon defendants in the form of enhanced product recognition and good will").

Finally, Defendants unjust enrichment claim does not fail as to whether Koch conferred a benefit on Jupiter by helping to recruit Wilson for Jupiter's board.  The Koch Parties cite to Koch's testimony that he was "the one who introduced Glynn Wilson to the company" and presented evidence that Koch set up meetings among Wilson, John, and himself.  *See* Koch Parties' 56.1 Response ¶ 23.  Although this evidence appears to be mostly related to Koch's role in soliciting an investment from Wilson, *see id.*; Dkt. No. 139, Ex. 1 at 174, the Caro Parties do not present the Court any contrary evidence.  In particular, although the Caro Parties' 56.1 cites to Wilson's declaration and deposition to support its proposition that Koch did not influence Wilson's decision to join Jupiter's board, the Caro Parties have not provided the Court with either Wilson's declaration or deposition.  Thus, the Caro Parties have provided the Court with no admissible evidence demonstrating that Koch did not recruit Wilson to Jupiter's board and have failed to carry their burden at the summary-judgment stage.  *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists.").

---

the degree it relies on the development of the underlying logos.  The Koch Parties do not dispute that the logos were never used and present no evidence that the logos benefited Jupiter in any way.  *See* Caro Parties' 56.1 ¶ 56; Koch Parties' 56.1 Response ¶ 56.

The two cases that Plaintiffs argue suggest that Defendants' unjust enrichment claim must fail as a matter of law because Defendants fail to specify the "manner and extent to which" Jupiter was unjustly enriched are inapposite.  *See* Dkt. No. 131 at 16.  In *Pawaroo v. Countrywide Bank*, 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010), the court dismissed the plaintiff's unjust enrichment claim at the motion-to-dismiss stage because the plaintiff did "not discuss what those undeserved benefits are or how they were accrued."  The only case that the court cite to support its proposition was a Second Department case, *Old Republic National Title Insurance Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (2d Dep't 2005), which dismissed an unjust enrichment claim because the plaintiff only claimed that the defendant "received benefits, standing alone."  Similarly, in *Alko Mfg. Corp. v. Neptune Meter Co.*, 246 N.Y.S.2d 265, 266 (1st Dep't 1964), *aff'd*, 209 N.E.2d 819 (N.Y. 1965), the First Department dismissed an unjust enrichment claim at the motion-to-dismiss stage because the plaintiff "fails to allege defendants' receipt of profit or property rightfully the plaintiff's."  Both cases support the proposition that it is insufficient for a complaint to allege, in a conclusory fashion, that the defendant received a benefit and that a complaint based solely on such conclusory allegations will be dismissed on a motion to dismiss.  Neither case is relevant here where, at the summary-judgment stage, Defendants have presented evidence that Jupiter has received specific benefits—namely, a website, a brand name, and a board member—at Koch's expense.

Nor must Defendants show that there is a "causal relationship between the Koch Parties' efforts and Jupiter's assets."  Dkt. No. 131 at 16 (cleaned up).  Each of the cases that Plaintiffs cite stands for the uncontroversial proposition that Defendants must offer evidence that they conferred a benefit on Jupiter, not that this evidence be in the form of a causal relationship

between the services Koch rendered and Jupiter's balance sheet.  In *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263 (2d Cir. 1984), the Second Circuit held that a claim of unjust enrichment was without merit where even though the plaintiffs performed certain services for the defendant, including traveling to Europe on several occasions, reviewing financial reports, securing suppliers, arranging bank financing, and developing a copier program, plaintiffs failed to offer evidence that those activities benefitted defendant.  *Id.* at 264.  Similarly, in *Nelson v. Stanley Blacker, Inc.*, 713 F. Supp. 107, 111–12 (S.D.N.Y. 1989), the court held that plaintiff failed to establish a claim for unjust enrichment where there was no evidence that the expenses it incurred resulted in any benefit to defendant.  The court concluded: "Expenses of, or damages to, plaintiff do not necessarily constitute gain to a defendant in order to support a claim for unjust enrichment."  *Id.* at 111.  And in *Schatzki v. Weiser Capital Management, LLC*, 995 F. Supp. 2d 251, 253 (S.D.N.Y. 2014), *aff'd sub nom. BPP Wealth, Inc. v. Weiser Capital Management, LLC*, 623 F. App'x 7 (2d Cir. 2015), the court concluded that the "evidence has not established any benefit to [defendants] from retaining a copy of the client data that belonged to Plaintiffs." In contrast to each of these cases, Defendants have, at this stage, carried their burden:  They have presented evidence that at least creates a genuine issue of material fact as to whether they conferred specific benefits on Jupiter for which they should be compensated.

### 1.    Voluntary Payment Doctrine

Plaintiffs argue that Defendants' unjust enrichment claim with respect to the transfer of the www.cbdbrands.net domain is barred by the voluntary payment doctrine because Koch's transfer of the domain name to Jupiter was "a 'voluntary, calculated risk' to stay in Mr. John's good graces" and to collect money that he was already owed.  Dkt. No. 131 at 23. (quoting *Wells Fargo Bank, N.A. v. Burke*, 64 N.Y.S.3d 228, 233 (2d Dep't 2017).  Defendants counter that the voluntary payment doctrine only "applies to payments made for goods or services" and that the

transfer was not made with full knowledge of the facts because Koch thought he owned equity in Jupiter.  Dkt. No. 136 at 21.

"The voluntary payment doctrine precludes a plaintiff from recovering payments 'made with full knowledge of the facts' and with a 'lack of diligence' in determining his contractual rights and obligations."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (citation omitted); *see Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003); *see also 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 4608198, at *11 (E.D.N.Y. Sept. 25, 2018) (applying the voluntary payment doctrine to an unjust enrichment claim).  By statute, the voluntary payment doctrine does not preclude recovery when a payment is made under a mistake of law or under a mistake of fact.  *See* N.Y. C.P.L.R. 3005 ("When relief against a mistake is sought in an action . . . relief shall not be denied merely because the mistake is one of law rather than one of fact.").  The rationale behind the doctrine is "to ensure that, 'when a party intends to resort to litigation in order to resist paying an unjust demand, that party takes its position at the time of the demand, and litigate[s] the issue before, rather than after, payment is made.'"  *Aioi Nissay Dowa Ins. Co. Ltd. v ProSight Specialty Mgmt. Co., Inc.*, 2013 WL 3111349, at *11 (S.D.N.Y. June 20, 2013), *aff'd*, 563 F. App'x 68 (2d Cir. 2014) (quoting *Gimbel Bros. v. Brook Shopping Centers, Inc.*, 499 N.Y.S.2d 435, 439 (2d Dep't 1986)).

As a threshold matter, there is nothing inherent to the voluntary payment doctrine that would limit its reach to payment for goods or services, as Defendants claim.  The voluntary payment doctrine, by its terms, bars recovery for *any* payment made with full knowledge of the facts, irrespective of what the payment was for.  For this reason, courts have applied the voluntary payment doctrine to payments other than for goods and services.  *See, e.g., Dillon*, 790

N.E.2d at 1156 (barring recovery of payments for late fees); *839 Cliffside Ave. LLC*, 2018 WL 4608198, at *11 (barring recovery of payments made for taxes and insurance).  The policy rationale behind the doctrine—to encourage parties to litigate before, as opposed to after, a payment is made—supports this conclusion.  *See Aioi Nissay Dowa Ins. Co. Ltd.*, 2013 WL 3111349, at *11.  The goal of encouraging parties to challenge unjust payments before they are made is entirely agnostic as to what was exchanged for the payment.  Thus, the fact that Koch's "payment" to John was purportedly made to preserve Koch's relationship with John—and not for a good or service—does not bar the application of the voluntary payments doctrine.  *See Constellation Power Source, Inc. Select Energy, Inc.*, 2007 WL 188135, at *6 (D. Conn. Jan. 23, 2007) (holding that New York's voluntary payment doctrine applied where the plaintiff "knowingly and voluntarily paid grossed-up losses for which it did not believe it was responsible in order to achieve other goals regarding the parties' relationship").

Still, the Court finds that the voluntary payment doctrine does not preclude Defendants' unjust enrichment claim insofar as it seeks recovery for transferring www.cbdbrands.net, because there is a genuine issue of material fact whether Defendants were operating under a mistake of fact.  The Koch Parties present evidence that suggests that Koch thought that he was entitled to a 40% ownership stake of Jupiter.  *See* Koch Parties' 56.1 Response, Additional Facts ¶ 32.  In an email exchange between the parties, John stated that the "split is 60-40 take it or leave it."  Dkt. No. 139, Ex. 23 at KOCH 117191.  In the same email chain, Koch and John discussed Jupiter and Koch's involvement in Jupiter.  *Id.* at 117192, 117195.  Thus, Koch could have thought that he was contributing www.cbdbrands.net to an entity in which he had a significant equity interest, not transferring the domain name merely to maintain his relationship with John, as Defendants suggest.  Under this mistake of fact, the voluntary payments doctrine would not apply.  *Cf. Island*

*Fed. Credit Union v. Smith*, 875 N.Y.S.2d 198, 200 (2d Dep't 2009) ("The principle that a party who pays money, under a mistake of fact, to one who is not entitled to it should, in equity and good conscience, be permitted to recover it back . . . applies even though the mistake is the result of the payor's negligence." (internal quotation marks and citation omitted)); *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 707 (1st Dep't 1990) (same).[12]

### B.    Equity

Plaintiffs argue that Defendants' unjust enrichment claim against Jupiter must fail as a matter of law because the "expectation of compensation arises out of [Defendants'] conspiracy to commit securities fraud."  Dkt. No. 131 at 23 (cleaned up).  In the SAC, Defendants allege that John retained Koch's shares of Jupiter in order to limit the association between Koch, who was convicted of securities fraud, and the Company.  *Id.* (quoting Dkt. No. 63 ¶¶ 283–86).  Because, as Plaintiffs contend, those convicted of securities fraud are prohibited from beneficially owning more than twenty percent of an issuer, Koch sought "to deceive the investing public about his involvement with Jupiter" and "equity and good conscience" prohibit recovery.  *Id.* at 24.

"The essence of an unjust enrichment claim rests in equitable justice."  *Strategic All. Partners, LLC v. Dress Barn, Inc.*, 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005).  "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Wildenstein*, 944

---

[12] The Court found that a portion of the email exchange, which was appended to Defendants' memorandum in opposition to the motion to dismiss the SAC, was insufficient to establish that there was an oral contract between Plaintiffs and Defendants with respect to Jupiter.  *See* Dkt. No. 127 at 25–26.  However, viewing this evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the" the non-moving party, *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004), as this Court is required to do, it is a question for the jury whether Koch was operating under a mistake of fact that bars the application of the voluntary payment doctrine.

N.E.2d at 1110 (internal citation and quotation marks omitted); *see Restatement (Third) of Restitution and Unjust Enrichment* § 63 (2011) ("Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability.").  Thus, a plaintiff's unclean hands can bar recovery.  "The doctrine of unclean hands is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff."  *Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) (internal quotation marks and citation omitted).  The application of unclean hands is appropriate "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) (internal quotation marks omitted) (quoting *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996)).  However, "[t]he doctrine of unclean hands is not an applicable defense to plaintiffs' equitable claims [if] the . . . defendants were 'willing wrongdoers.'"  *Tai v. Broche*, 982 N.Y.S.2d 463, 465 (1st Dep't 2014) (citation omitted); *see also X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 162 (1994) (holding that "the relative culpability" of the parties is relevant "in assessing the possibility of unjust enrichment"). Plaintiffs' argument that unclean hands bars recovery as a matter of law fails for two independent reasons.

First, Plaintiffs offer no admissible evidence to support its claim that Koch sought to avoid the securities laws through his arrangement with John.  It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment.  *See, e.g.*, *Bentivegna v. People's United Bank*, 2017 WL 3394601, at *13 (E.D.N.Y. Aug. 7, 2017), *on*

32

*reconsideration in part*, 2017 WL 4277149 (E.D.N.Y. Sept. 25, 2017) ("Although the Plaintiff cites to her unverified complaint in support of these contentions, an unverified complaint is not admissible evidence."); *Yearwood v. LoPiccolo*, 1998 WL 474073, at *5 (S.D.N.Y. Aug. 10, 1998) (Chin, J.) ("[N]o effect need be given at summary judgment" to an unverified complaint.); *see also Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("A complaint is not evidence, except insofar as it contains admissions."). Even a verified complaint need not be considered at the summary judgment stage if it is not referenced in a party's Rule 56.1 statement. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000). The only apparent "evidence" that Plaintiffs offer to support their proposition that Koch was engaged "in a conspiracy to hide [his] ownership in and affiliation with Jupiter from regulators and the public" are several paragraphs from Defendants' SAC. *See* Dkt. No. 131 at 24. The SAC, however, is not admissible at the summary judgment stage and the Caro Parties' 56.1 contains no other admissible evidence that supports Plaintiffs' contention that Koch was involved in this alleged conspiracy. For the purposes of this motion, the Court is not required to—and does not—accept Plaintiffs' argument that equity and good conscience bar recovery as a matter of law.[13]

Second, to the degree that Plaintiffs would have the Court accept that Koch was engaged in a conspiracy to skirt the securities laws and hide his beneficial ownership of Jupiter shares

---

[13] Plaintiffs also argue that Defendants' acknowledgment that John "[took] risk and work[ed] more than Mr. Koch" bars Defendants' claim for equitable relief. Dkt. No. 131 at 24 (quoting Dkt. No. 63 ¶ 302). Defendants' statement is a judicial admission that can be considered at the summary-judgment stage. *See Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation."); Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including . . . admission . . . ."). Plaintiffs did not include this admission in the Caro Parties' Rule 56.1 statement and thus the Court does not consider it in this motion. In any event, it is a question of fact whether the comparative risk and work that John undertook bars Defendants' recovery under equity.

from regulators and the public, the Court would also have to accept that there is a question of fact whether John was engaged in this conspiracy. The SAC alleges that John held onto the Jupiter shares because he "wanted to make sure that [Koch's] name was not associated with [Jupiter] in case anyone did a background search and found out about [his] criminal history." Dkt. No. 63 ¶ 284. Thus, John, as the owner of Jupiter, would also be culpable and it would be a question for the jury whether the relative culpability of the parties barred recovery by Defendants. *See Chirra v. Bommareddy*, 802 N.Y.S.2d 118, 119 (1st Dep't 2005) ("Nor are the unjust enrichment claims barred by . . . the doctrine of unclean hands, since the court must consider[, *intera alia*,] the relative culpability . . . of the parties." (internal citation omitted)); *see also Tai*, 982 N.Y.S.2d at 465 (concluding that doctrine of unclean hands did not bar unjust enrichment claim because defendant's "conduct enabled plaintiffs" to engage in allegedly unequitable action).

## C.    Remedy

Finally, Plaintiffs argue that because Defendants have failed "to muster any evidence of tangible, quantifiable benefit that they provided to Jupiter," their unjust enrichment counterclaim must fail as a matter of law. Dkt. No. 131 at 20; *see also* Dkt. No. 142 at 8. Defendants counter that there is sufficient evidence in the record to quantify the benefit that Koch conferred on Jupiter, namely John's offer to give Koch 40% of his shares in Jupiter. Dkt. No. 136 at 19. The Court finds that, while Defendants have not provided sufficient evidence to quantify the restitution to which they are entitled for helping to recruit Wilson to Jupiter's board and developing the name CaniSun, they have offered sufficient evidence to quantify the remedy for transferring www.cbdbrands.net.

The appropriate remedy for unjust enrichment is restitution. *See Restatement (Third) of Restitution and Unjust Enrichment* § 1 ("A person who is unjustly enriched at the expense of

another is subject to liability in restitution."); *State of N.Y. v. SCA Servs., Inc.*, 761 F. Supp. 14, 15 (S.D.N.Y. 1991) (holding that "restitution is the remedy for unjust enrichment").  In contrast to damages, which are measured by a plaintiff's loss, restitution is measured by a defendant's gain.  *See U.S. ex rel. Taylor v. Gabelli*, 2005 WL 2978921, at *4 (S.D.N.Y. Nov. 4, 2005); *see also Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009); *Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir. 2005).  There are several accepted practices to measure the value of a defendant's unjust gain, including the increase in the defendant's assets, the market value of services provided to the defendant, the use value of the benefits received, the gains realized by the defendant upon the sale or an asset, and secondary profits earned by the defendant.  *See Law of Remedies* § 4.4(1), at 432; *see also Restatement (Third) of Restitution and Unjust Enrichment* § 49.  The measure employed by a court reflects the policy goals of the underlying substantive law.  *See Law of Remedies* § 4.4(1), at 432–33; *see also Restatement (Third) of Restitution and Unjust Enrichment* §§ 50–52.

Although there is some degree of flexibility in methodology, a plaintiff must present sufficient evidence to measure the defendant's unjust gain.  *Compare, e.g.*, *Balestriere PLLC v. CMA Trading, Inc.*, 2014 WL 929813, at *14–15 (S.D.N.Y. Mar. 7, 2014) (rejecting plaintiff's unjust enrichment claim on summary judgment because there was, *inter alia*, no "cited evidence as to (1) the extent of the services [and] (2) their value" such that "on the current record [the court was] unable to ascertain as a matter of law the reasonable value of the services rendered by plaintiff"), *and Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) (rejecting unjust enrichment claim after a bench trial because "Plaintiffs have failed to provide the Court with competent evidence from which this appropriate measure of disgorgement can be calculated"), *with Matarese v. Moore-McCormack Lines*, 158

F.2d 631, 635–37 (2d Cir. 1946) (holding that there was sufficient evidence for jury to determine the "reasonable value" from the use of the plaintiff's devices and other services provided by plaintiff when plaintiff presented evidence "adequate to show extensive gross savings earned" and other direct savings), *and In re Worldcom, Inc.*, 371 B.R. 33, 45 (Bankr. S.D.N.Y. 2007) (refusing to find that plaintiff's unjust enrichment claim failed as a matter of law after disqualifying plaintiff's expert because there was other evidence which could "allow a reasonable fact finder to determine an award of damages based upon a theory of unjust enrichment").

Here, Defendants have presented no evidence that a factfinder could use to quantify the value that it bestowed on Jupiter by helping to recruit Wilson as a board member and helping to develop the CaniSun brand name. Defendants argue that they have presented sufficient evidence to quantify the value of these benefits because "John proposed that the Koch Parties receive 40% of Jupiter stock." Dkt. No. 136 at 17. However, this offer was not made specifically for these services; in fact, this offer appears to be at least partially (if not primarily) compensation for the money that Koch was helping to raise on Jupiter's behalf. *See* Dkt. No. 139, Ex. 23 at 117192, 117195 (discussing amount of money raised by Koch for CBD Brands). The Court has already determined that the Statute of Frauds bars Defendants' unjust enrichment claim for soliciting investments on behalf of Jupiter. *See supra* pp. 19–22. Defendants have provided no basis for a jury to determine which portion of this offer, if any, was considered to represent the value to Jupiter for recruiting Wilson to Jupiter's board and for helping to develop the CaniSun brand name or what these services, standing alone, would be worth. *Cf. Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (applying New York law and conclude that "[r]ecovery on a claim [of unjust enrichment] is 'limited to the reasonable value of the services rendered by the

plaintiff.'" (quoting *Collins Tuttle & Co. v. Leucadia, Inc.*, 544 N.Y.S.2d 604, 605 (1st Dep't 1989))).

Defendants argue that *Dorfman v. Reffkin*, 2020 WL 4287411 (N.Y. Sup. Ct. July 27, 2020), is "directly on point."  *See* Dkt. No. 136 at 18.  *Dorfman*, however, is inapposite. *Dorfman* addressed whether the defendant's equity offer to the plaintiff was admissible at trial. *See* 2020 WL 4287411, at *3.  While the court found that the offer was relevant to the plaintiff's unjust enrichment claim, it concluded that it was only relevant insofar as it helped to establish "whether Dorfman was an hourly employee, as defendants contend, or a founder, as Dorfman contends."  *Id.*  Plaintiff's classification as an hourly employee or founder, the court found, could "affect the calculation of damages, if any," but the plaintiff did not rely on the offer to establish the value of the services that he contributed to the defendant.  *Id.*  Contrary to Defendants' implication, the plaintiff in *Dorfman* sought to introduce additional evidence, by way of the testimony of at least two experts to establish the value of the benefits that the plaintiff conferred. *See id.* at *7 (permitting testimony of first expert insofar as it spoke to the "valu[e] of Dorfman's services"); *id.* at *8 (permitting second expert to testify to the "intrinsic value of Dorfman's services and the use of that information within the real estate technology industry").  Though expert testimony is not required, *see In re Worldcom, Inc.*, 371 B.R. at 45, Defendants have not presented any evidence with which a jury could quantify the value they conferred on Jupiter.[14]

---

[14] Defendants also argue that "in calculating damages, it is well-settled that '[t]he rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty or exactness, but only that the loss or damages be capable of ascertainment with reasonable certainty.'" Dkt. No. 136 at 19 (quoting *Reichman v. Warehouse One, Inc.*, 569 N.Y.S.2d 452, 453 (1st Dep't 1991)).  This argument speaks to damages, not restitution.  Even assuming *arguendo* that the same standards applied to damages and restitutionary calculations, Defendants have not presented sufficient evidence to calculate the value of the benefits that it conferred on Jupiter by way of helping to recruit Wilson for the board of directors and helping to develop the name CaniSun for the reasons described above.  Defendants thus have not carried

Defendants have, however, provided sufficient, albeit not extensive, evidence from which a jury could quantify the value of www.cbdbrands.net to Jupiter. There is evidence in the record of how much both Plaintiffs and Defendants paid for other websites, *see* Caro Parties' 56.1 ¶¶ 38–39; Koch Parties' 56.1 Response ¶¶ 38–39 (stating that www.canisun.com, www.canisun.net, www.kannablals.com, and www.kannables.com cost $65.98, $14.98, $12.17, and $12.17, respectively), and there is evidence of Jupiter's use of www.cbdbrands.net, *see* Koch Parties' 56.1 Response ¶ 42, all of which could be used by a jury to calculate the Koch Parties' restitutionary recovery. *See In re Worldcom, Inc.*, 371 B.R. at 45 (finding that the defendant's "history of paying commissions to agents could, if sufficiently similar circumstances are shown, allow a reasonable fact finder to determine an award of damages based upon a theory of unjust enrichment"). Alternatively, rescission may be an appropriate remedy in this case. *See Zola v. Gordon*, 685 F. Supp. 354, 374 (S.D.N.Y.), *on reargument*, 701 F. Supp. 66 (S.D.N.Y. 1988) ("Rescission is only a remedy, not a cause of action." (citing, *inter alia*, *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980))). Defendants conferred its property interest in www.cbdbrands.net to Jupiter and it appears both "feasible and equitable" to unwind this transfer of property. *See Restatement (Third) of Restitution and Unjust Enrichment* § 54 & cmt.a. *But see* Dkt. No. 136 at 21 ("[T]he Koch Parties are not seeking to recover the domain name."). Defendants can thus maintain their claim for unjust enrichment as it relates to their transfer of www.cbdbrands.net to Jupiter.

---

their burden. *See Gore v. Cardany*, 90 N.Y.S.3d 144, 146 (2d Dep't 2018).

**CONCLUSION**

Plaintiffs-Counterclaim Defendants motion for partial summary judgment is GRANTED, except insofar as Defendants-Counterclaim Plaintiffs seek restitution for transferring www.cbdbrands.net to Jupiter, as to which Plaintiffs-Counterclaim Defendants motion is DENIED.

The Clerk of Court is respectfully requested to close Dkt. No. 130.

SO ORDERED.

Dated: January 30, 2023
         New York, New York

_____
LEWIS J. LIMAN
United States District Judge